**Daniel E. GEER, Jr., et al., Plaintiffs,**

v.

**FEDERAL HIGHWAY ADMINISTRATION, et al., Defendants.**

**CITY OF CAMBRIDGE, Plaintiff,**

v.

**FEDERAL HIGHWAY ADMINISTRATION, et al., Defendants.**

**Civil Action Nos. 95–10147–DPW, 95–10500–DPW.**

United States District Court, D. Massachusetts.

Aug. 4, 1997.

Raymond Miyares, Thomas J. Harrington, Pickett & Miyares, Boston, MA, for Daniel E. Geer, Jr., Andreas Aeppli, Robert L. Bencher, Robin Bencher, Mark Browne, Mary Ellen Coyle Browne, Catherine A. Burke, David P. Burns, Renee Diprima Burns, William Cavellini, Katherine J. Coffey, Vincent Lawrence Dixon, Astrid A. Dodds, Douglas W. Dodds, Jr., R. Philip Dowds, K. Dun Gifford, Mark H. Jenkins, Dean R. Johnson, Joseph Joseph, Rosemary A. Keverek, Daniel T. King, Elaine Kistiakowsky, Catherine A. Lewis, Anne R. Lindsay, Louise Lewis, Henry Lukas, John W. MacDonald, Donald Maciver, George McCray, Debra McManus, Peter Murtha, Frederick C. Reece, S. Rivitz, Peter W. Roudebush, Rose Marie A. Ruggerio, Hugo Salemme, Phillip Sego, Bette L. Task, Anne Rawlings Toop, Joanne J. Turnbull, T. Underwood, Richard J. Vendetti, Melinda L Walch, Cambridge Citizens for Liveable Neighborhoods, Inc., Charles River Watershed, Association, Committee for Regional Transportation, Priscilla McMillan.

Edward F. Lawson, Weston, Patrick, Willard & Redding, Boston, MA, for City of Cambridge.

George B. Henderson, United States Attorney's Office, Boston, MA, Phyllis N. Crockett, Attorney General's Office, Boston, MA, Pierce O. Cray, Attorney General's Office, Boston, MA, for Federal Highway Administration, Rodney E. Slater, Stephen A. Moreno, Massachusetts Highway Department, Laurinda T. Bedingfiled.

Phyllis N. Crockett, Attorney General's Office, Boston, MA, Pierce O. Cray, Attorney General's Office, Boston, MA, for Donald Hammer, William Weld, James J. Kerasiotes, Dept. of Metropolitan Dist. Commission, David Balfour.

### MEMORANDUM REGARDING MOTIONS TO CONSIDER ADDITIONAL EVIDENCE

WOODLOCK, District Judge.

In connection with the summary judgment motions submitted by the parties in these consolidated actions, the City of Cambridge

has filed two motions requesting consideration of additional evidence not part of the administrative record filed by the defendants. The defendants oppose consideration of certain of this material.[1] In this Memorandum, I detail my disposition of those motions.

■ I note at the outset that in reviewing the sufficiency of a 4(f) finding, I must focus on the " 'whole record' [as] compiled by the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *see also Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) ("the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court"). I may, however, go beyond this record in certain limited circumstances:

> It could happen that a particular instance of judicial review of an EIS raises a 'genuine' and 'material' dispute of facts that requires a trial: Did the agency know, for example, about some important matter that the EIS ignored (and which the commenting parties did not know about and could not have pointed out?). Or did the agency improperly rely upon some other important, but secret, information not part of the record? Moreover, a reviewing court might want additional testimony by experts, simply to help it understand matters in the agency record; indeed, it might ask for additional factual evidence as an aid to understanding.

*Valley Citizens for a Safe Environment v. Aldridge,* 886 F.2d 458, 460 (1st Cir.1989) (citations omitted). For example, I may consider additional evidence outside of the administrative record "to show factors the agency should have considered, but did not ." *Conservation Law Foundation v. Clark,* 590 F.Supp. 1467, 1475 (D.Mass.1984). Or the additional material might provide helpful background information to aid the court's understanding, although it cannot supplant actual record in evaluating the propriety of the agency's determination. *Environmental Defense Fund v. Costle,* 657 F.2d 275, 286 (D.C.Cir.1981).[2]

■ Another circumstance in which I may consider additional information outside of the official record occurs when the agency has excluded from that record pertinent material that is otherwise located within its files, but which the agency chooses to exclude in an effort to manipulate its case on record review. *Environmental Defense Fund v. Blum,* 458 F.Supp. 650, 661 (D.D.C.1978). "The agency may not ... skew the 'record' for review in its favor by excluding from that 'record' information in its own files which has great pertinence to the proceeding in question." *Id.* In such a case, the court "may look beyond the administrative record when there is 'a strong showing of bad faith or improper behavior.' " *Town of Norfolk v. United States Army Corps of Engineers,* 968 F.2d 1438, 1456 (1st Cir.1992) (quoting *Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825). Furthermore, if the additional information includes factual or policy information relevant to the agency's decision, then the court may consider it. *See id.* at 1456.

■ I note finally that the consideration of any additional material falling within these factors is wholly discretionary with the court.

---

1. A footnote in the defendants' opposition to the Motion to Consider Additional Evidence also argues that I "should strike or disregard" Exhibit C to Geer's memorandum in opposition to the defendants' summary judgment motion because its authorship is in question, because it was never made part of the record, and because it is a draft. (Defs. Joint Limited Opp. Mot. to Consider Addt'l Evidence at 5 n. 4.) Exhibit C, however, appears to be simply an enhanced copy of a map contained in the 1993 Draft New Charles River Basin Master Plan, which is included as part of the administrative record. (The Draft Master Plan is located within the record as A.R. Doc. 414. The map is at page 74 of that document.)

Geer provided this enhanced version to the court because the one in the administrative record was "too degraded to be useful." (Geer Mem. Opp. Mot. Summ. J. at 15 n. 14.)

I have compared the two copies and concur with Geer that the version at Exhibit C is a bit more legible than the version in the administrative record. I decline to strike Exhibit C and have considered it in my evaluation of the summary judgment motions.

2. In this connection, I allowed plaintiffs' request for a view of the sites the parties consider relevant to the Administrative Record.

*Valley Citizens for a Safe Environment,* 886 F.2d at 460. With these principles in mind, I will consider each of the disputed documents in turn.

### I. *First Motion to Consider Additional Evidence*

In its first motion, the City of Cambridge has moved for consideration of an additional eighteen documents.[3] The defendants object to my consideration of eight of these documents.[4] (Defs. Joint Limited Opp. to Mot. Consider Addt'l Evid. at 2.)

A. *Tab 2: Charles River Basin Chronology:* Tab 2 consists of a nine-page document providing a chronology of the Charles River Basin from 1891 to 1990. Examination of this document indicates that it is, in part, a compilation of various other documents, including state laws and regulations and excerpts from various MDC reports. The later years of this chronology selectively quote from other documents, including letters between and among various advocacy groups and state and federal agencies. The entire text of these documents is not included.

The City of Cambridge argues that the MDC prepared this chronology and that it should be considered because it provides helpful background information. (City of Cambridge Mem. Supp. Mot. Consider Addt'l Evid. at 4.) Moreover, the City states that it can provide the testimony of MDC employees who will attest to the "authenticity of the chronology and the circumstances under which it was prepared." (City of Cambridge Mem. in Response to Defs. Opp. to Mot. Consider Addt'l Evid. at 2.) The defendants, however, dispute the authenticity and state that the chronology is not on MDC stationery, is not signed, and does not indicate whether it is the official position of the MDC or the work of an individual staff member. (Defs. Joint Limited Opp. to Mot. Consider Addt'l Evid. at 3.)

I do not find this document to be helpful background information and thus have not considered it. All of the entries in the chronology suffer from a lack of context. This is particularly so with respect to the entries that purport to be excerpts from letters. I note, however, that the full text of most of the chronological entries are already part of the record.[5]

B. *Tab 7: Interoffice Correspondence from MDC Secretary to MDC Director of Planning and Attached Letter from MDC Commissioner:* Tab 7 contains two documents. The first is an inter-office memo dated June 8, 1990 between William F. Chisholm, MDC Secretary, and Julia O'Brien, MDC Director of Planning. The second is a letter dated May 29, 1990 from MDC Commissioner, M. Ilyas Bhatti, to Dean F. Stratouly, President of the North Federal Properties Limited Partnership. The MDC inter-office memo contains what is apparently an

---

**3.** The City of Cambridge includes this evidence in the Appendix filed with its Opposition to Defendants' Joint Motion for Summary Judgment Together With City of Cambridge's Supporting Memorandum. I refer to this document as City of Cambridge Appendix.

**4.** There is a bit of confusion regarding whether the defendants object to the inclusion of Tab 9 as additional evidence. At the outset of their opposition memorandum, the defendants state that they "do not object to the Court's consideration of the following additional documents in the Appendix submitted by Cambridge: Documents at Tabs 1, *9*, 13, 14, and 16." (Defs. Joint Limited Opp. to Mot. Consider Addt'l Evid. at 2 (emphasis added).) However, in the next paragraph the defendants state that they object to the documents at "Tabs 2 and *7—12* of Cambridge's Appendix." *Id.* (emphasis added). In addition, the defendants state that although "Tabs 7, *9*, 10, and 11 do not suffer from the same deficiencies

of foundation as Tabs 2, 8, and 12 ... they should not be considered because they were never before the FHWA during the course of the decision-making process." *Id.* (emphasis added). Despite these contradictory assertions, which perhaps can be attributed to careless proofreading, I assume that the defendants' first statement that they do not object to the Tab 9 document, which is simply the 1984 license for the walkways on the railway bridge, is the operative one and I have considered the document. *See also* Part I.D., *infra.*

**5.** For example, the entries for 1909 and 1962 are excerpts from Massachusetts law, the full text of which I am, of course, bound to consider. Furthermore, many of the excerpted letters are also reproduced in full in the record. For example, the July 20, 1990 excerpt from a letter from the U.S. Coast Guard to the Secretary of EOEA is reproduced in full in the November 1990 FSEIR. (*See* A.R. Doc. No. 179 at IV 5.1–7.)

extract of MDC meeting minutes of May 31, 1990. At that meeting, a Mrs. O'Brien[6] references the Bhatti letter. The Bhatti letter references a Memorandum of Agreement (MOA) between the MDC and the Partnership in which the two parties are apparently coming to some sort of agreement regarding the development of what is called the "15 Monsignor O'Brien Highway Project". In the Bhatti letter, Commissioner Bhatti states that "MDC acknowledges the benefits to be provided to the public under the MOA, and the complementary nature of such public benefits with MDC's *intention to extend its park system throughout the New Charles River Basin, which area runs from the old locks at the Museum of Science to the New Charles River Dam and includes river frontage in the Northpoint District of Cambridge adjacent to the Project.* This letter sets forth the MDC's commitment to public benefits in the way of park land in the Northpoint section of the New Charles River Basin near the Project." (City of Cambridge Appendix, Tab 7, Bhatti Letter at 1 (emphasis added).) The letter concludes with a statement that the MDC has "every intention of assuring that the *New Charles River Basin Extension is an equally fine example of public park space.*" *Id.* at 3 (emphasis added).

The City of Cambridge argues that these two documents should be considered because "they are highly relevant to the §4(f) status of the Charles River and, therefore, will assist the Court in determining whether the defendants considered all relevant factors." (City of Cambridge Mem. Supp. Mot. Consider Addt'l Evid. at 4.) The defendants do not specifically challenge these two documents, but generally argue that "they should not be considered because they were never before the FHWA during the course of the decision-making process" and are not explanatory of the agency's determination. (Defs. Joint Limited Opp. to Mot. Consider Addt'l Evid. at 3.)

Although I am generally limited to the administrative record, I may go beyond this record in certain limited circumstances. *Valley Citizens for a Safe Environment,* 886

F.2d at 460. For example, I "may look beyond the administrative record when there is 'a strong showing of bad faith or improper behavior.'" *Town of Norfolk,* 968 F.2d at 1456 (quoting *Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825).

In *Town of Norfolk,* the First Circuit held that the District Court had properly found on the basis of an in camera review that certain documents did not belong in the administrative record and did not provide a showing of bad faith or improper behavior and thus properly did not permit them to supplement the administrative record. *Town of Norfolk,* 968 F.2d at 1459, *aff'g* 137 F.R.D. 183 (D.Mass.1991). The plaintiffs in the lower court had alleged that notes from a telephone call between an official at the Justice Department and an Army Corps of Engineers official indicated that the Justice Department and EPA were attempting improperly to influence the Army Corps into withdrawing a permit. *Towns of Norfolk and Walpole,* 137 F.R.D. at 185. As a result, the plaintiffs sought to submit subpoenaed documents from the three agencies that might "include materials that the Corps considered in reaching its decision." *Id.* Of the documents in question, the majority included documents that were never in the possession of the Army Corps and thus could not be considered by them in the permitting process. *Id.* at 186. Seven documents, however, were seen by Army Corps personnel. *Id.* Six documents were letters written from the Justice Department to the Army Corps; document seven was an unsigned draft of a letter from the Army Corps to the MWRA. *Id.* The district court examined the seven documents to determine if they contained any factual information or policy recommendations which the Army Corps may have considered, but found that the six signed letters did not. *Id.* at 186–87. The unsigned letter expressed a conclusion which the Army Corps later dropped. *Id.* at 187. The court then labeled this document as a "deliberative document" and not part of the administrative record. *Id.*

---

6. Although the inter-office memo does not disclose the identity of Mrs. O'Brien, it appears to be the same Julia O'Brien, Director of Planning, to whom the memo is directed.

The First Circuit affirmed all of the lower court's findings. *Town of Norfolk*, 968 F.2d at 1456–58. With regard to the deliberative process privilege, the First Circuit held that the agency may properly withhold a document if a number of requirements are met:

> First, the document must be prepared prior to a final decision in order to assist an agency decisionmaker in arriving at his decision. Second, the document must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Furthermore, factual information that may be segregated from the rest of the document is not protected by the privilege.

*Id.* at 1458 (citations omitted).

The district court also considered whether any of the documents should be examined because of any strong showing of bad faith or improper behavior. *Towns of Norfolk and Walpole*, 137 F.R.D. at 188. The court found that none of the documents made this strong showing. *Id.* Even if it did, the court concluded that it would still keep the documents out because "it is well settled that an agency's internal deliberations are privileged."[7] *Id.* (citing *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51, 95 S.Ct. 1504, 1516–17, 44 L.Ed.2d 29 (1975).)

Both the district court and the appeals court also considered whether high level ex parte communications between federal executive branch officials could be construed as improper pressure. The district court noted that in some communications, the Army Corps basically told the Justice Department (which was defending the EPA in another lawsuit involving the towns over the same project) to "relax". *Towns of Norfolk and Walpole*, 137 F.R.D. at 188. The district court found that any pressure did not rise to a problematic level and that it was "to be expected that officials in the federal executive branch should coordinate their actions and attempt to take a uniform position" and thus fell short of a bad faith showing. *Id.* at 189.

Here, one of the plaintiffs' main contentions is that the FHWA improperly failed to designate the portion of the Charles River Basin immediately upstream of the New Charles River Dam and adjacent land as protected §4(f) resources.[8] In support of this contention, the plaintiffs allege that the MDC changed its position regarding the classification of §4(f) resources that it controlled because of improper pressure from the MHD and/or EOEA.

While I recognize that neither of the two Tab 7 documents formally came before the FHWA and thus could not have been considered by them, I have nevertheless considered them on the issue of the reasonableness of the failure of the FHWA to consider certain §4(f) resources. The plaintiffs identify evidence in the Administrative Record that certain personnel of the MDC did, in fact, view the entire Charles River Basin area as a park and express that view at various times. Indeed, the plaintiffs cite to numerous other documents in the record that support this position.[9] These two additional documents

---

7. The policy reason behind the privilege is that if an agency "had to fear that any internal communications inconsistent with its final action would be subject to public scrutiny, [then] the consideration of contrary viewpoints ... would be inhibited." *Towns of Norfolk and Walpole v. Army Corps of Engineers*, 137 F.R.D. 183, 188 (D.Mass. 1991). "The fact that there was divided opinion within an executive agency does not automatically imply bad faith." *Id.*

8. The agency having responsibility over the potential §4(f) resources, here the MDC, makes the determination whether to classify those resources as protected by §4(f). 49 U.S.C. § 303(c); 23 C.F.R. § 771.135(d). If the agency having jurisdiction over a park or recreation area determines that the site is not significant and therefore not subject to § 4(f), then the FHWA must "review the significance determination to assure its reasonableness." 23 C.F.R. § 771.135(c).

9. *See, e.g.*, A.R. Doc. 419 (April 21, 1989 Letter from Julia O'Brien, MDC Director of Planning, to EOEA ("The evaluation of Parkland Impacts fails to address the impact of any of the family of alternatives on the south bank of Paul Revere Landing Park or on the MDC land for continuous public open space along both sides of the river" and "there is *no* analysis in [the section on Ramps to Causeway Street Area] of parkland impact" (emphasis in original))); A.R. Doc. 420 (May 1, 1989 Letter from MDC Commissioner Bhatti to EOEA ("There is, however, no indication [in the Draft SEIS] that [Massachusetts]

have been considered in evaluating the significance of that contention.

C. *Tab 8: Staff Memorandum and Draft Impact Letter to FHWA:* Tab 8 contains two documents. The first is a file memorandum on plain stationery dated April 8, 1991. The second is an unsigned draft letter from MDC Commissioner Bhatti to Anthony Fusco, the Regional Administrator of FHWA. The file memorandum states that EOEA had requested a copy of this draft and that EOEA would forward the FSEIR comments on to FHWA and "that individual agencies were not to send separate comments." (City of Cambridge Appendix, Tab 8, File Memorandum at 1.) The Bhatti draft letter presents several comments on the §4(f) status of the Charles River. (City of Cambridge Appendix, Tab 8, Bhatti Draft Letter at 3–5.)

The plaintiffs argue that these two documents should be considered because they "explain decision makers' actions and address the issue of whether the defendants considered all relevant factors." (City of Cambridge Mem. Supp. Mot. Consider Addt'l Evid. at 4–5.) They further argue that these two documents demonstrate that "EOEA's action precluded the MDC from carrying out its duty

as the state agency with legal responsibility for the Charles River Basin and, therefore, violated §4(f)." (City of Cambridge Mem. Opp. Mot. Summ. J. at 49.) The defendants, on the other hand, state that the documents are not on MDC stationery, are merely drafts, and only represent the position of a lone staff member. (Defs. Joint Limited Opp. to Mot. Consider Addt'l Evid. at 3 .) The defendants also state that these two documents were not submitted to the MHD or FHWA which suggests that they were not official documents approved by the MDC.[10] The plaintiffs reply that they can provide the testimony of one or more MDC employees regarding the preparation of these documents and that at least one of these employees will testify that Commissioner Bhatti approved the draft letter. (City of Cambridge Mem. in Response to Defs. Opp. to Mot. Consider Addt'l Evid. at 2.)

The defendants' argument regarding the draft and unsigned nature of the letter has some force. Were it not for the allegation that improper pressure was brought to bear upon the MDC, I might summarily dismiss such draft documents. But the plaintiffs' allegations place these documents in a differ-

legislation [defining the entire Charles River Basin as part of the metropolitan parks system] affects the 4(f) review of the Central Artery .... The MDC believes that the statutory language is clear: that the Charles River Basin itself is a park, and that this park extends to the new dam [and thus] will affect the drafting of the 4(f) evaluation statement[.]"); A.R. Doc. 414 at 47, 49, 55, 56, 57, 60 (Draft New Charles River Basin Master Plan, December 1993 (discussing various recreational and park uses of the area between the new Charles River Dam and the upstream MBTA bridge)); A.R. Doc. 307 (May 5, 1994 Letter from Department of Interior Office of Environmental Policy Director Jonathan P. Deason to FHWA ("we note that this final Section 4(f) evaluation continues to disallow ... the river segment from the (new) Charles River Dam to the railroad bascule bridge—the segment over which the Preferred 12–lane Central Artery bridge system would cross. Our basis for understanding [that this area should be included] is found in the Metropolitan District Commission's (MDC) determination/dedication meeting minutes of June 12, 1980 ... [to which] is attached a drawing descriptive of that new (or extended) Charles River Basin.")); A.R. Doc. 447 (September 28, 1993 Letter from Julia O'Brien, MDC Director of Planning, to Robert Albee, MHD/Cen-

tral Artery/Tunnel Project ("In the discussions with MHD before the DSEIS was released, the MDC requested that the walkways on both the upstream and downstream sides of the MBTA trestle be designated as Section 4(f) resources")).

10. The defendants also claim that a November 9, 1990 letter from MDC Commissioner Bhatti to the FHWA Regional Administrator contains the official MDC designation of its §4(f) resources. (Defs.' Joint Mem. Supp. Summ. J. at 42–43.) In this letter, the MDC Commissioner designates the portion of the river upstream of the MBTA bridge for park and recreational purposes, but states that while the downstream portion is in a multiple use area, its primary purpose will not be recreational. (*See* December 1993 FSEIS/R, Final Section 4(f) Evaluation, Appendix 3, Ex. A (November 9, 1990 Letter of MDC Commissioner Bhatti to Anthony Fusco, Regional Administrator of FHWA).) Although the plaintiffs dispute the defendants' characterization of the §4(f) implications of this letter on the downstream portions of the basin, (*see* City of Cambridge Mem. Opp. Mot. Summ. J. at 31–35; Geer Mem. Opp. Mot. Summ. J. at 22–25), I have assumed for the purposes of the Motion to Allow Additional Evidence that the November 9, 1990 letter represents a change from the previous MDC posture on its §4(f) resources.

ent light. If, as the plaintiffs allege, this draft *was* approved by Bhatti and if the draft *was* forwarded to the EOEA to incorporate in the EOEA's comments to the FHWA but was not, in fact, so incorporated, then this might provide evidentiary support for the proposition that the MDC's obligation to identify its §4(f) resources was impeded by improper political pressure.

I note that both the district court and First Circuit opinions in *Towns of Norfolk and Walpole* do not foreclose this reasoning. The district court specifically held that although it was to be expected that the various federal executive branches might coordinate their responses, it was not "fashion[ing] any broad doctrine of intra-executive privilege." *Towns of Norfolk and Walpole,* 137 F.R.D. at 189. Without listing what circumstances might be relevant, the district court also stated that circumstances might exist that "show conclusively that an agency decision was based on irrelevant or improper considerations and in which such communications ought to be disclosed." *Id.* The First Circuit opinion also opens the door to an inquiry whether at least some types of political pressure might be of such character and magnitude that combined with other "colossal" failures including the failure "to compile an administrative record or to make formal findings and [to approve a] bridge project prior to the finalization of the plans for the bridge," could lead to the inclusion of the documents not formally a part of the record. *Town of Norfolk,* 968 F.2d at 1459 (distinguishing *D.C. Fed'n of Civic Ass'ns v. Volpe,* 459 F.2d 1231 (D.C.Cir.1971), *cert. denied,* 405 U.S. 1030, 92 S.Ct. 1290, 31 L.Ed.2d 489 (1972)).

■ In addition, given MDC's position regarding its § 4(f) resources outlined in the May 1, 1989 Bhatti letter as discussed note 9 *supra,* I am obliged to examine the administrative record very carefully to evaluate this alleged shift in MDC's position.[11] I treat the ultimate issues in greater detail in the Memorandum and Orders regarding the motions

for summary judgment. It is sufficient merely to note here that "[i]f the record fails to show a sufficient basis for the administrative decision, the 4(f) determination must be overturned." *Druid Hills Civic Ass'n, Inc. v. Federal Highway Admin.,* 772 F.2d 700, 714 (11th Cir.1985), *cert. denied,* 488 U.S. 819, 109 S.Ct. 60, 102 L.Ed.2d 38 (1988). I have considered the two Tab 8 documents in that light.

D. *Tab 10: Agreement Between MBTA and MDC Regarding Walkways on MBTA Bridge:* Tab 10 contains an agreement dated November 2, 1989 between the MDC and the MBTA. In the agreement, the MBTA granted to the MDC the care and control of the concrete pedestrian walkways located on either side of the MBTA bridge. (City of Cambridge Appendix, Tab 10, Agreement at 1–3.) The plaintiffs allege that these walkways should have been classified as §4(f) resources. (Geer Complaint ¶ 90; City of Cambridge Complaint ¶ 78; Geer Mem. Opp. Mot. Summ. J. at 31; City of Cambridge Mem. Opp. Mot. Summ. J. at 35–37.) Because the Tab 10 Agreement provides helpful background information on the legal ownership status of the bridge walkways, I have considered this additional information.

E. *Tab 11: DEP Memorandum Regarding Charles River Crossing:* Tab 11 is a memorandum from Thomas Powers, Deputy Commissioner of DEP, to James Gomes, Undersecretary of EOEA and Steven Davis, Director of the MEPA Unit. It summarizes DEP's major issues and concerns regarding various aspects of the Central Artery project. One of the issues raised in the memorandum is that the proposed Scheme Z would disrupt the agency's attempts to create a continuous parkland along the banks of the Charles River. (City of Cambridge Appendix, Tab 11, Memorandum at 2.) The plaintiffs do not allege that DEP was subject to improper pressure; furthermore, there is no allegation that this document was forwarded to either MDC or FHWA officials for their review and was thus relevant to the §4(f) discussion. As

---

11. The April 8, 1991 draft letter references the November 9, 1990 Bhatti letter and states that the "FSEIS draws unwarranted conclusions" from it with regard to MDC's § 4(f) resources.

(City of Cambridge Appendix, Tab 8, Draft Letter at 3.) The draft also gives four specific reasons why the FSEIS determination of MDC §4(f) resources is wrong. *Id.* at 3–4.

a result, I have not considered this document as part of the evidence before me.

F. *Tab 12: Draft MDC Planning Map of § 4(f) Areas:* Tab 12 is a color map that is entitled "DRAFT—4(F) AREAS." The map is dated August 23, 1989. Above the date are the words "MDC PLANNING." The defendants argue that it is merely a draft and that "there is no indication ·of the context in which it was prepared."[12] (Defs. Joint Limited Opp. Mot. to Consider Addt'l Evidence at 3.) Furthermore, the City of Cambridge states that it is prepared to provide testimony from one or more MDC employees that this plan was presented to the EOTC Secretary on August 23, 1990. (City of Cambridge Mem. in Response to Defs. Opp. Mot. to Consider Addt'l Evidence at 3.)

This map does not establish what actual MDC decision-makers considered to be § 4(f) resources. I have, nevertheless, considered the draft map as additional evidence of plaintiffs' contentions.

## II. *Second Motion to Consider Additional Evidence*

The City of Cambridge's second motion to consider additional evidence deals with material in the City's Supplemental Appendix. The defendants oppose only the two documents found at Tab 6.

The first of the documents is a letter from the City of Cambridge's counsel to the MDC requesting documents under the state Public Records Act. The second is a response letter from the MDC indicating that some of the documents are quite long. The defendants oppose consideration of these documents.

I have not considered these documents as supplements to the record or otherwise. They appear to relate to requests for copies of the documents that are listed in the Charles River Basin Chronology. Because I have not allowed the Chronology in as evidence, I will not allow a copy of a Public Records Request seeking the documents purportedly excerpted in the Chronology. Had the City requested to introduce actual documents which are not already part of the record, then I would have considered such a request separately.

---

12. The defendants also argue that there is no indication that the map was prepared by the MDC. (Defs.' Joint Limited Opp. Mot. to Consider Addt'l Evid. at 3.) The City of Cambridge, in its response to the defendants' opposition, provides a copy of a letter from Commissioner Bhatti that indicates that the MDC provided this map to the City's attorneys. (City of Cambridge Mem. in Response to Defs.' Opp. Mot. to Consider Addt'l Evidence, Appendix.) Given this letter, and given the fact that the draft map clearly states "MDC Planning", I decline to rely upon defendants' authorship argument.